**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CARLOS ROBERTO DE ANDRADE,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**ANTONE MONIZ,**<br><br>**Respondent.** | **Civil Action No.**<br>**25-cv-12455-FDS** |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**SAYLOR, J.**

This is a habeas petition that concerns the government's authority to hold a non-citizen pending removal proceedings.[1] Petitioner Carlos Roberto De Andrade is a citizen of Brazil who entered the United States illegally in 2021. He was arrested, detained, and placed into expedited removal proceedings under 8 U.S.C. § 1225(b)(1). He was then—in apparent violation of that statute, which requires mandatory detention—released on conditional parole under § 1226(a).

Petitioner later moved to Massachusetts and married a United States citizen. In 2025, ICE arrested him when he reported for a routine check-in. The government contends that he is subject to mandatory detention under § 1225(b)(1), notwithstanding his parole four years ago

[1] The petition names Antone Moniz, Superintendent, Plymouth County Correctional Facility; Patricia Hyde, Field Office Director, U.S. Immigration and Customs Enforcement; Todd Lyons, Acting Director, U.S. Immigration and Customs Enforcement; and Kristi Noem, U.S. Secretary of Homeland Security, as respondents. The Court notes that Moniz, "as the person who has custody over [the petitioner]," is the only proper respondent. 28 U.S.C. § 2242; *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[I]n habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."). The Court will therefore dismiss the other respondents.

under § 1226(a) and his undisputed compliance with the conditions of that parole. He contends that his release under conditional parole means he is no longer subject to expedited removal proceedings and that his detention under § 1225(b)(1) is therefore unlawful.

For the reasons that follow, the Court agrees with petitioner, and that he is therefore being detained without lawful authority.

## I. Background

Carlos Roberto De Andrade is a citizen of Brazil. (Pet. Writ Habeas Corpus ¶ 1, Dkt. No. 1). On April 21, 2021, he unlawfully entered the United States near Otay Mesa, California. (Chan Decl. ¶ 7, Dkt. No. 8-1; Notice and Order of Expedited Removal, Dkt. No. 11-1). Customs and Border Patrol arrested and detained him shortly thereafter. (Chan Decl. ¶ 7). The next day, CBP issued him a Notice and Order of Expedited Removal, Form I-860, pursuant to 8 U.S.C. § 1225(b)(1), which alleged that he was inadmissible to the United States. (Chan Decl. ¶ 8; Notice and Order of Expedited Removal). That same day, he indicated an intention to apply for asylum, claiming a fear of returning to Brazil. (Chan Decl. ¶ 8).

On May 29, 2021, CBP referred De Andrade to U.S. Citizenship and Immigration Services for a credible-fear interview. (Chan Decl. ¶ 9). He did not receive such an interview, however. (*Id.* ¶ 10). Instead, on June 17, 2021, he was released on recognizance. The order releasing him, Form I-220A, indicated that he was being released "[i]n accordance with Section 236 of the Immigration and Nationality Act," which is codified as 8 U.S.C. § 1226. (Order of Release on Recognizance, Dkt. No. 10-2).

Following his release, De Andrade moved to Massachusetts and applied for asylum. (Pet.'s Reply at 2-3, Dkt. No. 10; Notice of Action, Dkt. No. 10-4). In 2024, he married a United States citizen. (Certificate of Marriage, Dkt. No. 10-6). His wife later filed a petition for alien

relative on his behalf, which apparently has not been resolved. (Notice of Action, Dkt. No. 10-5).

De Andrade currently lives in Massachusetts with his wife. (Pet. Writ Habeas Corpus ¶ 1). He has continuously been in the United States since 2021 and has complied with all requirements of his conditional parole. (*Id.* ¶¶ 1-2).

On August 22, 2025, De Andrade went to an ICE office in Burlington, Massachusetts, for a routine check-in. (Pet. Writ Habeas Corpus ¶ 2). He was arrested when he reported. (Chan Decl. ¶ 11). The government asserts that he was detained because he is subject to mandatory detention under 8 U.S.C. § 1225. (*Id.*). That day, he was moved to the Plymouth County Correctional Facility, where he remains. (*Id.*).

On August 25, 2025, De Andrade again filed a request for asylum, claiming a fear of returning to Brazil. (Chan Decl. ¶ 12). On September 9, 2025, he filed a petition for a writ of habeas corpus in this court.[2]

On September 18, 2025, De Andrade had a custody redetermination hearing before an immigration judge. (Order Immigr. Judge, Dkt. No. 10-1; Resp'ts' Status Report at 1, Dkt. No. 11). DHS argued that he was subject to mandatory detention under 8 U.S.C. § 1225, and the immigration judge denied his request for a change of custody on that ground. (Pet.'s Reply at 3; Order Immigr. Judge). The same day, a USCIS asylum officer conducted a credible-fear interview. (Resp'ts' Status Report at 1).

De Andrade remains in custody. (*Id.* at 1-2). According to the government, his continued detention is mandatory under 8 U.S.C. § 1225(b)(1). (*Id.* at 2).

[2] In order to maintain jurisdiction, the Court ordered that De Andrade should not be moved outside of the District of Massachusetts without prior notice. (Service Order, Dkt. No. 4).

## II. Analysis

### A. Jurisdiction

The court has jurisdiction to hear writs of habeas corpus filed by immigration detainees held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Congress has stripped courts of the jurisdiction to review orders of removal pursuant to § 1225(b)(1). *See* 8 U.S.C.§ 1252(a)(2)(A).[3] Petitioner does not ask, and the Court does not endeavor, to review any determination by ICE of his admissibility or the merits of his asylum claim. Rather, this review is confined to the issue of whether he is lawfully detained under § 1225(b)(1).

### B. Statutory Basis for Detention

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Immigration and Naturalization Act governs the detention and removal of non-citizens. The INA distinguishes between non-citizens seeking entry into the United States and those "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). 8 U.S.C. § 1225 creates an expedited removal process for applicants for admission seeking to enter the United States. *See Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108-11 (2020). 8 U.S.C. § 1226, in contrast, is the "default rule" for detaining non-citizens within the United States, *Jennings*, 583 U.S. at 288, pending the outcome of the "usual removal process" under § 1229a, *Thuraissigiam*, 591 U.S. at 108.

[3] "Matters not subject to judicial review" include "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title"; "a decision by the Attorney General to invoke the provisions of such section"; "the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title"; and "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title." 8 U.S.C. § 1252(a)(2)(A). There are limited exceptions not at issue here. *Id.* § 1252(e).

Section 1225 covers "applicants for admission." Under that provision, an immigration officer who determines that an alien "arriving in the United States . . . is inadmissible . . . shall order the alien removed . . . without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." § 1225(b)(1)(A)(i).[4] If the applicant expresses a fear of persecution, the officer "shall refer the alien for an interview by an asylum office." § 1225(b)(1)(A)(ii).

Section 1225(b)(1) provides for mandatory detention of non-citizens subject to its provisions—that is, a non-citizen "arriving in the United States" who seeks to apply for admission. Applicants who indicate a fear of persecution if returned to their country of origin "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." § 1225(b)(1)(B)(iii)(IV). Applicants who do demonstrate a credible fear "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Detention is "mandate[d] . . . throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings*, 583 U.S. at 302. Under the statute, applicants are not entitled to a bond hearing, nor is there a limit on the length of detention, other than whatever limit the Constitution may impose. *See id.* at 301 (finding that § 1225(b)(1) cannot "reasonably be read to limit detention to six months").

There is a "limited" exception to mandatory detention under § 1225. *Jennings*, 583 U.S. at 301. Applicants detained under § 1225 may be paroled into the country "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C.

[4] At the discretion of the Attorney General, that provision may also apply to a non-citizen "who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this paragraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Respondents do not contend this subsection applies. (Resp'ts' Opp'n at 20).

§ 1182(d)(5)(A). That "authority is not unbounded," and "under the APA, DHS's exercise of discretion within that statutory framework must be reasonable and reasonably explained." *Biden v. Texas*, 597 U.S. 785, 806-07 (2022).

Parole under § 1182(d)(5)(A) does not affect an alien's statutory or constitutional rights, as it "shall not be regarded as an admission of the alien." § 1182(d)(5)(A). Such parole "employs a legal fiction whereby non-citizens are physically permitted to enter the country but are nonetheless 'treated,' for legal purposes, 'as if stopped at the border.'" *Martinez v. Hyde*, 2025 WL 2084238, at *3 (D. Mass. July 24, 2025) (quoting *Thuraissigiam*, 591 U.S. at 139). A non-citizen paroled into the country under § 1182(d)(5)(A) is still treated as an applicant for admission subject to the expedited removal process. *See* § 1182(d)(5)(A).

In contrast, § 1226(a) governs the detention of non-citizens "already present in the United States." *Jennings*, 583 U.S. at 303. It includes non-citizens who have never been legally admitted. *See id.* at 287 (explaining that § 1226(a) governs "aliens who were inadmissible at the time of entry." (citing 8 U.S.C. § 1227(a)). Under that provision, the Attorney General has the discretion to arrest and detain a non-citizen "[o]n a warrant . . . pending a decision on whether the alien is to be removed." § 1226(a). The detainee may be released on bond or conditional parole, § 1226(a)(2), except if certain enumerated categories (not applicable here) apply, § 1226(c). Federal regulation further requires that § 1226(a) detainees "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Notably, conditional parole under § 1226(a) is distinct from "humanitarian" or "significant public benefit" parole into the United States under § 1182(d)(5)(A). Conditional parole under § 1226(a) "releases a non-citizen already in the country from domestic detention"

pending the normal removal process, whereas parole under § 1182(d)(5)(A) "permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen" as an applicant for admission in expedited removal proceedings. *Martinez*, 2025 WL 2084238, at *3.[5]

In sum, § 1225 provides for mandatory detention for non-citizens who are "applicants for admission" into the United States, while § 1226 provides for discretionary detention for non-citizens "already present" in the United States. That distinction is critical. A non-citizen "on the threshold"—or one paroled under the legal fiction of being on the threshold of entry—has only the "rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. In contrast, one that has "effected an entry into the United States" has constitutional protections. *Zadvydas v. Davis*, 533 U.S. at 693.[6] And due process entitles a § 1226(a) detainee to a hearing in which the government must "either (1) prove by clear and convincing evidence that [the detainee] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). A § 1225 detainee is entitled to no such review, even though the detainee may pose no danger to the community or flight risk, and the process may be as lengthy the regular removal process. *See*

[5] Interpreting a different provision of the INA, multiple Courts of Appeals have found that § 1226(a) conditional parole and § 1182(d)(5)(A) parole into the United States are distinct and grant different legal rights. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1119 (9th Cir. 2007); *Cruz-Miguel v. Holder*, 650 F.3d 189, 201 (2d Cir. 2011); *Delgado-Sobalvarro v. Att'y Gen. of U.S.*, 625 F.3d 782, 786 (3d Cir. 2010); *Castillo-Padilla v. U.S. Atty. Gen.*, 417 F. App'x 888, 891 (11th Cir. 2011).

[6] "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

*Thuraissigiam*, 591 U.S. at 111 ("Whether an applicant [for admission] who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release.").

**C. Lawfulness of Detention of Petitioner**

The government contends that petitioner is held under § 1225(b)(1) because he remains an "applicant for admission" subject to the 2021 removal order. (Respt's' Opp'n at 2, Dkt. No. 8; Respt's' Status Report at 2). Again, in 2021, petitioner was detained shortly after he crossed into the United States and issued a determination of inadmissibility pursuant to § 1225(b)(1). All agree that at that time he was in fact an applicant for admission lawfully held under § 1225(b)(1).

In June 2021, petitioner was conditionally paroled under § 1226(a). He was released under an "Order of Release on Recognizance" "[i]n accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] . . . provided [he] comply with [specified] conditions." (Order of Release on Recognizance). As other courts have recognized, "[i]t is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007). The government does not dispute that petitioner was conditionally paroled.

Again, § 1225 mandates detention for "applicants for admission" with only limited, individually determined exceptions for parole into the United States. Petitioner's release under conditional parole was therefore in apparent violation of the statute. The government nevertheless contends that the mandatory detention provision of § 1225 still applies and that, going forward, petitioner may be released, if at all, only pursuant to § 1182(d)(5)(A) parole. (Respt's' Opp'n at 16 n.2; Respt's' Status Report at 2).

Petitioner contends that his release under § 1226 effected an entry into the United States such that he is no longer an "applicant for admission." (Pet.'s Reply at 9-10). He further contends that his detention under § 1225(b)(1) without a bond hearing therefore deprives him of

his right to due process. (*Id.* at 11 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)).

The question is thus whether petitioner's conditional parole under § 1226 means that he is "already present" in the United States, not an "applicant for admission," and therefore § 1225 no longer applies to him.

Petitioner's view is clearly correct. By releasing petitioner under conditional parole, the government failed to reserve its right to treat petitioner "in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The act of parole extinguished the legal fiction that a non-citizen who is physically present in the United States has, in fact, not effected an entry into the United States. And once having entered, petitioner can no longer be treated as an "applicant for admission" subject to expedited removal and mandatory detention under § 1225. He must be treated like any other unlawfully "present" non-citizen—and the lawfulness of his detention is governed by 8 U.S.C. § 1226.[7]

In substance, the government asks the Court to turn a blind eye to the circumstances of petitioner's release and the events of the last four years. It contends that his "release was not an admission to the United States and did not change his status as an applicant for admission subject to expedited removal." (Respt's' Opp'n at 10). But petitioner has been residing in Massachusetts since 2021. He is not seeking parole *into* the United States. He was already conditionally paroled into the United States. And he is still here. Congress provided a

[7] It is noteworthy that in *Thuraissigiam*, the Supreme Court addressed the habeas petition of a non-citizen who was stopped within 25 yards of the border. 591 U.S. 103, 114 (2020). He was detained for expedited removal and claimed fear of persecution, which an asylum officer determined was not credible. His habeas petition sought review of that credible-fear determination, not release. Citing § 1226(a), the Supreme Court noted that "simply releasing him would not provide the right to stay in the country that his petition ultimately seeks. Without a change in status, he would remain subject to arrest, detention, and removal." 591 U.S. at 119. The Court then cited §§ 1226(a) and 1229a(e)(2)—but not § 1225. Albeit in dicta, the Supreme Court assumed that releasing a § 1225 detainee would leave him subject to § 1226 discretionary detention—not re-detention under § 1225.

mechanism for paroling applicants for admission into the United States without changing their status. *See* 8 U.S.C. § 1182(d)(5)(A). The government elected not to use that mechanism. It cannot now turn back the clock, and neither can the Court. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

In short, this Court joins the many other courts in this district and across the country that have found that non-citizens who have been conditionally paroled into the United States are entitled to discretionary detention and a bond hearing under §§ 1226(a), not mandatory detention under 1225(b). *See Rodriguez v. Bostock*, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases).[8]

Here, the petitioner does not seek—at least in this petition—the right to stay in the country. He instead seeks release pending further immigration proceedings. And while he may "remain subject to arrest, detention, and removal" under §§ 1226(a) and 1229a(e)(2), he is not subject to detention under § 1225(b)(1).

"The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). The Court finds petitioner has met his burden. Because he cannot be detained under 8 U.S.C. § 1225(b)(1), and respondents have not established an alternative authority for detention, he is being held unlawfully. The Court will therefore grant his petition for release.

---

[8] Petitioner's 2021 Notice and Order of Expedited Removal, which included a determination of inadmissibility, puts him on slightly different footing than petitioners without such a finding. Nevertheless, § 1226(a) encompasses detention of non-citizens already within the United States pending removal—including those "who were inadmissible at the time of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Petitioner's determination of inadmissibility does not take him outside of § 1226(a)'s "default rule." *Id.*

## III. Conclusion and Order

Accordingly, and for the foregoing reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED. Respondent Antone Moniz, the warden of the Plymouth County Correctional Facility, is hereby ORDERED to release petitioner from custody immediately.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: October 7, 2025